UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:19-CR-087 |
| | ) | |
| JOY HILEMAN | ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's renewed *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), and for the appointment of counsel. [Doc. 394].[1] The United States has responded in opposition [docs. 396, 397] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

In February 2020, the Honorable Pamela L. Reeves sentenced the defendant to an 87-month term of imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FPC Alderson with a projected release date of September 15, 2025. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 30, 2021). She now seeks compassionate release due a recent cancer diagnosis, 1998 thyroid issues, 2014 melanoma issues, gallbladder surgery, back problems, a hernia, obesity, and her rehabilitative efforts.[2]

---

[1] A previous motion was denied by the undersigned on October 30, 2020. [Docs. 267, 302].

[2] In her prior motion, the defendant also cited the COVID-19 pandemic. As such, the Court will address her current arguments herein both as presented and in conjunction with the ongoing pandemic.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on her behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. When the undersigned denied the defendant's prior compassionate release motion in October 2020, district courts in this circuit regularly turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling

2

reasons" warranting a sentence reduction. However, courts in this circuit are no longer to do so, at least as to compassionate release motions filed by prisoners (rather than by the BOP). *See Jones*, 980 F.3d at 1108 ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief motion on her behalf. [Doc. 267]. Thirty days have passed since that request was received by the warden of her facility. [*Id.*]. The United States does not dispute that the defendant has exhausted her administrative remedies, and the Court finds that it has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of her motion the defendant cites a recent cancer diagnosis, 1998 thyroid issues, 2014 melanoma issues, gallbladder surgery, back problems,

---

[3] No guideline policy statement other than § 1B1.13 has been raised in this case.

3

a hernia, obesity, and her rehabilitative efforts. The Court has also considered the ongoing COVID-19 pandemic, as cited in the defendant's prior motion.

At the defendant's correctional institution, there are currently 19 inmates and four staff positive for COVID-19, with 15 inmates and 31 staff having recovered, and no deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 30, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at the defendant's prison, 70 staff and 399 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 30, 2021). The defendant has herself been fully vaccinated. [Doc. 397].

BOP medical records filed by the United States confirm that in June of this year the defendant was diagnosed with a malignant tumor in her right breast. [*Id.*]. She is awaiting a mastectomy. [*Id.*]. Additionally, as of March 3, 2021, the defendant weighed 241.2 pounds with a height of 68 inches. [*Id.*]. These numbers equate to a body mass index

4

("BMI") of 36.7. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Sept. 30, 2021). Persons with a BMI of 30 or greater are considered obese. *Id.*

Obese persons and persons with cancer can be more likely to become severely ill if infected with COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 30, 2021). Nonetheless, although the Court sincerely sympathizes with defendant regarding her recent diagnosis, the Court cannot find that her cancer and obesity, even when considered along with her other purported conditions and the COVID-19 pandemic generally, presently amount to extraordinary and compelling grounds for her release.

As pointed out by the United States, there is simply no evidence that the defendant's medical conditions render her significantly vulnerable in the prison setting at this time. As recently as May and July of this year, medical examiners have described her as "[a]ppear[ing] well" and "healthy-appearing." [Doc. 397]. In July of this year, she reported no significant problems such as weakness or shortness of breath. [*Id.*]. On the record before it, the Court does not find extraordinary and compelling reasons for compassionate release at this time.

Even if that were not the case, the Court concludes—as it did in its prior ruling— that the defendant's release would not be consistent with 18 U.S.C. § 3553(a). [Doc. 302, p. 7-9]. As directed by § 3582 and the Sixth Circuit's holding in *Jones*, the Court has considered

5

the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .
>
> (5) any pertinent policy statement—

6

Case 2:19-cr-00087-RLJ-CRW   Document 398   Filed 10/06/21   Page 6 of 9   PageID #: 2809

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court appreciates that the defendant has incurred no disciplinary sanctions while serving her sentence, and that she is participating in rehabilitative programming to the extent such resources are available during the pandemic. [Doc. 396, p. 6]. The defendant is encouraged to remain on that path. The Court also observes that, when sentenced, the defendant had a relatively minor criminal history. [Presentence Investigation Report, doc. 118, ¶¶ 46-51].

Conversely, in this case the defendant admittedly sold a substantial quantity of methamphetamine over a period of approximately two years. [*Id.*, ¶¶ 11-28]. She also had more than five coconspirators "selling for her." [*Id.*, ¶ 19]. She was able on one occasion to travel from East Tennessee to Memphis for the purpose of transporting "three large suitcases full of methamphetamine" back to this district. [*Id.*, ¶ 15]. The defendant was able to accomplish her crimes despite suffering from several of same medical conditions which she now offers as grounds for compassionate release. [*Id.*, ¶¶ 57-58]. Of additional concern is the defendant's significant substance abuse history dating back to at least 2001.

7

[*Id.* ¶ 61].

For her *substantial* role in this conspiracy, the defendant received a sentence of only 87 months. That sentence was just recently imposed, in February 2020, and the majority of it remains unserved. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

The Court, again, appreciates the defendant's rehabilitative efforts, her BOP disciplinary record, and her recent medical diagnosis. Those facts, however, are outweighed by her significant role in this conspiracy and the immeasurable amount of harm that she caused. Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. APPOINTMENT OF COUNSEL

The defendant again asks that an attorney be appointed on her behalf. The Court addressed that request in its prior ruling as follows:

> There is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

> The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Further, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion, but FDSET has not chosen to make an appearance in this case.

[Doc. 302, p. 9-10].

For those same reasons, the defendant's renewed request for appointment of counsel will be denied.

### IV. CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release and for appointment of counsel [doc. 394] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge